RECORD NUMBER: 14-1343

# United States Court of Appeals

### *for the*

# Fourth Circuit

**ROBIN J. YORK,**

**Administratrix of the Estate of Adam R. York,**

*Appellant,*

– v. –

**PROPERTY AND CASUALTY INSURANCE
COMPANY OF HARTFORD,**

*Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT CHARLESTON

# OPENING BRIEF OF APPELLANT

JAMES GRAHAM BORDAS III
MICHELLE LEE MARINACCI
BORDAS & BORDAS, PLLC
1358 National Road
Wheeling, WV 26003
(304) 242-8410

C. BENJAMIN SALANGO
PRESTON & SALANGO
P.O. Box 3084
Charleston, WV 25331
(304) 342-0512

*Counsel for Appellant*

CP  COUNSEL PRESS ● VA – (800) 275-0668

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __14-13-43__    Caption: __York v. Property and Casualty Insurance Company of Hartford__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Robin J. York, Administratrix of the Estate of Adam R. York__
(name of party/amicus)

_____

who is _____ Appellant _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?  ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO
     If yes, identify all such owners:
     Upon information and belief, Appellee Property and Casualty Insurance Company of Hartford and/or its parent company, "The Hartford", are publically traded under the NYSE symbol HIG

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☑YES ☐NO
      If yes, identify entity and nature of interest:

      Upon information and belief, Appellee Property and Casualty Insurance Company of Hartford and/or its parent company are publically traded under the NYSE symbol HIG

5.    Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: _Michelle Marinacci_        Date: _April 23, 2014_

Counsel for: _Appellant_

## CERTIFICATE OF SERVICE
*****************************

I certify that on _____April 23, 2014_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

John J. MacCorkle, Esq.
Renatha S. Garner, Esq.
MacCorkle, Lavendar & Sweeney, PLLC
300 Summers Street
Suite 800
Charleston, WV 25301

Katheryn M. Lloyd, Esq.
Carpenter Lipps & Leland, LLP
280 North High Street
Suite 1300
Columbus, OH 43215

_Michelle Marinacci_
(signature)

_April 23, 2014_
(date)

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ......................................................................... iii

JURISDICTIONAL STATEMENT ............................................................. 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ........................... 1

STATEMENT OF THE CASE ...................................................................... 3

SUMMARY OF ARGUMENT ..................................................................... 11

ARGUMENT .................................................................................................. 14

I.    The district court erred in denying Mrs. York's Motion to Remand this case to the Circuit Court of Mingo County, West Virginia where Hartford, a defaulted party, had actual notice of an August 6, 2012 hearing wherein it could have first ascertained diversity jurisdiction, failed to appear and then removed the claims seventy-seven days later, on October 12, 2012, in violation of 28 U.S.C. §1446(b) ................................................................................................. 14

      Standard of Review ........................................................................... 14

      Discussion ............................................................................................ 14

II.   The district court abused its discretion and erred in setting aside a $4,127,615.80 judgment entered by the Circuit Court of Mingo County, West Virginia which properly valued the damages sustained by the Estate of Adam R. York as a result of the negligence of an underinsured driver.  Not only are the district court's findings of excusable neglect and meritorious defense unsupported by the facts but the decision demonstrates that it was impacted by improper considerations and a fundamental misunderstanding of West Virginia law ............................................ 17

      Standard of Review ............................................................................ 17

Discussion ........................................................................... 17

III.    The district court erred in applying Kentucky law and refusing to apply West Virginia law to this bad faith claim handling lawsuit where the underlying claim arose in West Virginia, arose from the negligence of a West Virginia resident, was litigated in West Virginia, was handled by Hartford's representatives in Indiana and Kentucky's only contact to the dispute was that the applicable policy of insurance was issued to Kentucky residents ...................... 20

Standard of Review ............................................................. 20

Discussion ........................................................................... 21

IV.    The district court erred in its application of Kentucky law to dismiss, on summary judgment, Mrs. York's first-party bad faith claims arising from Hartford's handling of a claim for underinsured motorist coverage benefits arising from the death of Adam R. York.  Even if Kentucky law were applicable, which it is not, Mrs. York presented sufficient evidence of Hartford's claim handling misconduct to survive summary judgment ......................... 28

Standard of Review ............................................................. 28

Discussion ........................................................................... 28

CONCLUSION ........................................................................... 41

REQUEST FOR ORAL ARGUMENT ....................................... 43

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**

*Allison v. Meadows*,
    2005 WL 2016815 (S.D.W.Va. Aug. 22, 2005) ................................. 15

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S.Ct 2505, 91 L.E.2d 202 (1986) ........................ 29

*Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*,
    843 F.2d 808 (4th Cir. 1988) ................................................ 17

*Bonds v. Leavitt,*
    629 F.3d 369 (4th Cir. 2011) ............................................... 28

*Budde v. State Farm Mut. Auto. Ins. Co.*,
    2011 WL 1695838 (W.D.Ky. May 4, 2011) ..................................... 35

*Carruba v. Transit Cas. Co.*,
    443 F.2d 260 (6th Cir. 1971) ............................................... 35

*Coots v. Allstate Ins. Co.*,
    853 S.W.2d 895 (Ky. 1993) ............................................. 35, 37

*Curry v. Fireman's Fund Ins.*,
    784 S.W.2d 176 (Ky. 1989) ......................................... *passim*

*Dixon v. Coburg Dairy, Inc.*,
    369 F.3d 811 (4th Cir. 2004) ............................................... 14

*Farmland Mut. Ins. Co. v. Johnson*,
    36 S.W.2d 368 (Ky. 2000) ................................... 13, 31, 32, 33

*Federal Kemper Ins. Co. v. Hornback*,
    711 S.W.2d 844 (Ky. 1986) ................................................. 31

*Glynn v. EDO Corp.*,
    710 F.3d 209 (4th Cir. 2013) ............................................... 28

*Hartley v. CSX Transp., Inc.*,
    187 F.3d 422 (4th Cir. 1999) .............................................................. 14

*Hawkins v. Ford Motor Co.*,
    566 S.E.2d 624 (W. Va. 2002) .......................................................... 26

*Jacobson v. United States*,
    503 U.S. 540, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992) ................... 18

*Kentucky Farm Bureau Mut. Ins. Co. v. Young*,
    317 S.W.3d 43 (2010) ...................................................... 25, 35, 36, 37

*King v. Kayak Manuf. Corp.*,
    688 F.Supp. 227 (N.D.W.Va. 1988) .................................................. 15

*Knotts v. Zurich Ins. Co.*,
    197 S.W.3d 512 (Ky. 2006) .......................................................... 29, 31

*Lovern v. Gen. Motors Corp.*,
    121 F.3d 160 (4th Cir.1997) .............................................................. 15

*McMahon v. Advance Stores Co., Inc.*,
    2008 WL 183715 (N.D.W.Va. Jan. 18, 2008) ................................... 15

*Malone v. Kentucky Farm Bureau Mut. Ins. Co.*,
    287 S.W.3d 656 (Ky. 2009) .............................................................. 37

*Marshall v. Saseen*,
    450 S.E.2d 791 (W.Va. 1994) ................................................ 12, 19, 20

*Mayes v. Rapoport*,
    198 F.3d 457 (4th Cir. 1999) .............................................................. 14

*Motorists Mut. Ins. Co. v. Glass*,
    996 S.W.2d 437 (Ky. 1999) ...................................................... 30, 32, 34

*Mulcahey v. Columbia Organic Chemicals Co.*,
    29 F.3d 148 (4th Cir. 1994) .............................................................. 14

iv

*Noland v. Virginia Insurance Reciprocal*,
    686 S.E.2d 23 (W.Va. 2009) ............................................................ 21

*Oakes v. Oxygen Therapy Services*,
    363 S.E.2d 130 (W.Va. 1987) .................................................... 22, 23

*Park Corp. v. Lexington Ins. Co.*,
    812 F.2d 894 (4th Cir. 1987) ........................................................... 17

*Paul v. National Life*,
    352 S.E.2d 550 (W.Va. 1986) .................................................... 21, 22

*Payne v. Forest River, Inc.*,
    2014 WL 1120251 (M.D.La. March 20, 2014) ................................ 16

*Perini/Tompkins Joint Venture v. Ace American Ins. Co.*,
    738 F.3d 95 (4th Cir. 2013) ............................................................ 21

*Phelps v. State Farm Mut. Auto. Ins. Co.*,
    680 F.3d 725 (6th Cir. 2013) ..................................................... 29, 30

*Seabulk Offshore, Ltd. v. American Home Assur. Co.*,
    377 F.3d 408 (4th Cir. 2004) ......................................................... 20

*Simpson v. Travelers Ins. Cos.*,
    812 S.W.2d 510 (Ky. 1991) ............................................................ 30

*State Farm Mut. Auto. Ins. Co. v. Reeder*,
    763 S.W.2d 116 (Ky. 1988) ............................................................ 30

*Sun Trust Mort., Inc. v. Pippin*,
    2012 WL 5023109 (W.D.N.C. Oct. 16, 2012) ................................ 15

*United Services Automobile Association v. Bult*,
    183 S.W.3d 181 (Ky. Ct. App. 2003) .......................................... 32, 41

*United States v. Aquino–Chacon*,
    109 F.3d 936 (4th Cir.)*, cert. denied*,
    522 U.S. 931, 118 S.Ct. 335, 139 L.Ed.2d 260(1997) ..................... 18

*White v. Lowe's Home Centers, Inc.*,
    29 F.Supp.2d 330 (N.D.W.Va. 1998) ............................................ 26, 29

*Wilt v. State Automobile Mutual Insurance Company*,
    506 S.E.2d 608 (W.Va. 1998) ........................................................ 21

*Wittmer v. Jones*,
    864 S.W.2d 885 (Ky. 1993) ............................................................ 31

*Wittmer v. Jones*,
    864 S.W.2d at 890 ........................................................................... 41

*Yarnevic v. Brink's Inc.*,
    102 F.3d 753 (4th Cir. 1996) ....................................................... 15

*Yost v. Travelers Ins. Co.*,
    181 F.3d 95, 1999 WL 409670 (4th Cir. 1999) ............................ 26, 27

**Rules, Statutes:**

28 U.S.C. § 1331 ...................................................................................... 1

28 U.S.C § 1332(a) .................................................................................. 1

28 U.S.C. § 1446(b) ....................................................................... *passim*

29 U.S.C § 1291 ....................................................................................... 1

Fed. R. Civ. P. 60(b) ............................................................................... 17

Ky. Rev. Stat. § 304.12–230 ......................................................... *passim*

Va. Code § 55-7-6 ............................................................................. 25, 37

Va. Code § 55-7-7 ............................................................................. 25, 37

W. Va. Code § 33-11-1 ..................................................................... 26, 29

W. Va. Code § 33-11-4(9) ...................................................................... 8

W. Va. R. Civ.P. 55(b)(2) ............................................................... 18

**Other Authorities:**

Restatement (Second) of Conflicts of Laws, Section 6 .......................... 22, 25

Restatement (Second) of Conflicts of Laws, Section 145 ..................... 22, 23

## JURISDICTIONAL STATEMENT

The United States District Court for the Southern District of West Virginia improperly retained jurisdiction over Appellant Robin J. York, Adminstratrix of the Estate of Adam R. York's [hereinafter "Mrs. York"] claims against Appellee Property and Casualty Insurance Company of Hartford [hereinafter "Hartford"] under 28 U.S.C. § 1331 after Hartford, a party against whom default judgment had been entered in a lawsuit pending in the Circuit Court of Mingo County, West Virginia, removed the action by asserting diversity jurisdiction under 28 U.S.C §1332(a). The October 12, 2012 removal was untimely under 28 U.S.C. § 1446 (b) because it occurred more than thirty days after Hartford failed to appear at an August 6, 2012 wrongful death settlement approval hearing which rendered the non-diverse defendants nominal parties and of which Hartford had prior notice of the date, time, location and purpose. On March 4, 2014, the district court granted Hartford's Motion for Summary Judgment and dismissed Mrs. York's claims. This Court has jurisdiction pursuant to 29 U.S.C §1291 because the district court's March 4, 2014 Order constitutes a final decision of the district court.  Mrs. York timely filed a Notice of Appeal on March 31, 2014.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    The district court erred in denying Mrs. York's Motion to Remand this case to the Circuit Court of Mingo County, West Virginia, where Hartford, a

1

defaulted party, had actual notice of an August 6, 2012 hearing wherein it could have first ascertained diversity jurisdiction, failed to appear and then removed the claims seventy-seven (77) days later, on October 12, 2012, in violation of 28 U.S.C. §1446(b).

2.     The district court abused its discretion and erred in setting aside a $4,127,615.80 judgment entered by the Circuit Court of Mingo County, West Virginia which properly valued the damages sustained by the Estate of Adam R. York as a result of the negligence of an underinsured driver.  Not only are the district court's findings of excusable neglect and meritorious defense unsupported by the facts but the decision demonstrates that it was impacted by improper considerations and a fundamental misunderstanding of West Virginia law.

3.     The district court erred in applying Kentucky law and refusing to apply West Virginia law to this bad faith claim handling lawsuit where the underlying claim arose in West Virginia, arose from the negligence of a West Virginia resident, was litigated in West Virginia, was handled by Hartford's representatives in Indiana and Kentucky's only contact to the dispute was that the applicable policy of insurance was issued to Kentucky residents.

4.     The district court erred in its application of Kentucky law to dismiss, on summary judgment, Mrs. York's first-party bad faith claims arising from Hartford's handling of a claim for underinsured motorist coverage benefits arising

2

from the death of Adam R. York.  Even if Kentucky law were applicable, which it is not, Mrs. York presented sufficient evidence of Hartford's claim handling misconduct to survive summary judgment.

## STATEMENT OF THE CASE

On October 13, 2011, Mrs. York's twenty-two year old son, Adam R. York, was tragically killed in a single vehicle wreck in Mingo County, West Virginia, which occurred when Adam R. York was traveling as a back-seat passenger in a vehicle owned and operated by West Virginia resident Joshua Miller [hereinafter "Miller"] when Miller lost control of his vehicle, collided with an embankment and rolled several times. App.  64-65; 528-529; 1250. At the time of the wreck, Adam was insured under a motor vehicle policy of insurance issued by Hartford to his parents, Chester and Robin York, which provided $100,000 in underinsured motorist [hereinafter "UIM"] coverage benefits. App. 1250. Hartford was promptly notified of Mrs. York's claim for UIM policy benefits and opened its claim file on October 21, 2011. App. 896. Immediately, Hartford began seeking ways to avoid liability by questioning whether an assumption of risk defense could be asserted on October 21, 2011, October 25, 2011 and November 7, 2011. App. 897-899.

On or about November 1, 2011, Mrs. York instituted a lawsuit against Miller in the Circuit Court of Mingo County, West Virginia seeking compensation for Adam's death as a result of Miller's negligence. App. 27-30. By letter dated

December 2, 2011, Miller's liability insurer, USAA, tendered his available bodily injury liability limits of $100,000 contingent upon a waiver of subrogation from Hartford. App. 900. On January 11, 2012, Hartford began investigating whether liability could be imposed upon other persons, including West Virginia residents, and whether dram shop liability could be imposed on the West Virginia establishments visited by the men earlier in the evening prior to the wreck. App. 901. Mrs. York forwarded USAA's December 2, 2011 letter to Hartford on January 23, 2012, requested the subrogation waiver needed to accept the settlement offer and demanded payment of Hartford's available $100,000 in UIM coverage benefits to compensate Mrs. York for Adam's death, a loss which clearly exceeded Miller's liability policy limits. App. 902-903.

Hartford's claim representative responsible for handling Mrs. York's claim admitted to receiving the January 23, 2012 letter no later than January 25, 2012. App. 913, 915.  On January 25, 2012, Hartford valued the *non-economic* damages of Adam's death at $800,000-$1,000,000, without considering any economic damages whatsoever. App. 987-990. However, instead of responding to the requests made in Mrs. York's January 23, 2012 letter, Hartford dug deeper into the assets of Miller and his parents in the hopes of finding assets other than its own policy proceeds for Mrs. York to recover. App. 901. Hartford did not respond to the January 23, 2012 letter in any manner until March 29, 2012 at which time it

4

inquired as to whether Miller had an umbrella policy. App. 917, 937. In the meantime, Hartford looked for ways to avoid all liability through assertion of an assumption of liability defense or by transferring liability to other West Virginia residents.  App. 937.

Significantly, Hartford's March 29, 2012 "response" to Ms. York's request for waiver of subrogation, consent to settle and demand for payment of Hartford's UIM coverage benefits, occurred *after* Hartford was properly served with and received Mrs. York's March 9, 2012 Amended Complaint naming Hartford as a defendant and asserting a claim for payment of the $100,000 in UIM coverage benefits due and owing under Hartford's policy.[1] App. 33-42, 938-941. Hartford representatives admitted to not responding Mrs. York's January 23, 2012 request for a waiver of subrogation and consent to settle.   App. 919, 954, 962-968. Hartford representatives admitted that Hartford did not advise Mrs. York of any alleged deficiency in the January 23, 2012 letter or that Hartford wanted or needed additional information before responding to the request for waiver of subrogation and consent to settle or the policy limit demand. App. 919-920. Instead, Hartford continued in its attempt to shift liability for Adam York's tragic death onto Miller's father.  App. 937. Hartford also failed to respond to or acknowledge in any manner

---

[1] The Amended Complaint also added claims against John J. Miller and Myra Miller because ownership of the vehicle involved in the accident had not been confirmed.

Plaintiff's Amended Complaint and the Summons issued by the Circuit Court of

Mingo County, West Virginia.  App. 62-63.

Hartford's first alleged response to Mrs. York's January 23, 2012 policy

limit settlement demand occurred on June 11, 2012 when Hartford claims a policy

limit offer was left on a voice mail on the West Virginia telephone of Mrs. York's

West Virginia lawyer. [2] App. 920-922. However, Hartford admitted in deposition

that it had never made an unconditional offer of the policy limits.[3] App. 926. While

---

[2]  Hartford's claim that an offer was made in the June 11, 2012 voicemail is directly contradicted by its claim representative's testimony that Hartford had no obligation to Mrs. York until *after* Mrs. York's settlement with Miller was authorized by the court and an August 13, 2012 claim file entry noting that it was still investigating its subrogation options and had not agreed to release Miller. App. 921-922; 954. Similarly, Hartford's claim manager overseeing Mrs. York's claim, also testified that Hartford's UIM coverage may not have been triggered even as of the date of his August 21, 2013 deposition because liability and subrogation issues remained unresolved, thus casting additional doubt on the legitimacy of any claim that an offer was made in June 2012 and providing evidence that Hartford's misconduct was intentional and in reckless disregard of its insured's rights. App. 957-968.

[3]  Hartford's claim representative testified:

    Q.    Did you ever make an unconditional offer of the policy limits of a hundred thousand dollars during the time that you were handling this claim?

    A.    I don't know what – what does that mean?

    Q.    Did you ever make a policy limits offer of $100,000 while you were handling the claim that was not conditioned upon some other things occurring, such as a settlement being reached with the tortfeasor's carrier or any other things?

    A.    Well, technically the underinsured motorist coverage doesn't even get triggered until that is done, so no.

App. 926

the parties[4] disagree whether a policy limit offer was made in the June 11, 2012 voicemail, it is undisputed that Hartford did not respond to Mrs. York's policy limit demand in any manner until June 11, 2012, nearly five months after it was made, three months after suit was filed seeking payment of the $100,000 UIM coverage benefits and two months after it was required, under West Virginia law, to serve its Answer to the Amended Complaint and appear in the Circuit Court of Mingo County, West Virginia.

As a result of Hartford's failure to respond to the Amended Complaint, the Circuit Court of Mingo County, West Virginia found Hartford in default on June 12, 2012. App. 62-63. Despite Hartford being in default, Mrs. York served Hartford with multiple documents listing it as a defendant in the case caption including: (1) A Notice of Hearing for a Writ of Inquiry to be held before the Circuit Court of Mingo County on August 6, 2012; (2), her Verified Petition and Application for Permission to Settle Claim and Distribute Proceeds; and (3) A Notice of Hearing that the Petition would also be heard on August 6, 2012.  App. 246-261. The Petition unambiguously indicates that Mrs. York is seeking the court's permission to release the non-diverse defendants, thus rendering them

---

[4] Mrs. York's counsel testified regarding the June 11, 2012 voicemail stating: "She said she was sending an offer, yes.  She didn't say she was tendering the limits…I assumed she was sending me an offer. Which she never did… I thought she was sending me an offer.  She is tendering our offer.  So I waited for an offer, which I never received. … I have never had an insurance carrier tender limits without sending me either a written letter or a check.".  App. 951-953.

nominal parties to any continued litigation when granted. *Id.* The Petition and both Notices of Hearing were scanned into Hartford's claim file and in Hartford's possession on August 1, 2012, at least five days prior to the hearings. *Id.*

Despite actual, advance notice of the August 6, 2012 proceedings and its status as a defendant in the litigation, Hartford failed to appear at the August 6, 2012 hearings. *Id.* At the August 6, 2012 Writ of Inquiry, the Circuit Court of Mingo County accepted evidence, heard the testimony of witnesses and determined that the damages sustained by the Estate of Adam R. York as a result of his untimely death totaled $4,127,615.18 and entered judgment against Hartford subject to a credit for the $100,000 settlement with Miller.[5] App. 64-69. On August 20, 2012, Ms. York filed a Second Amended Complaint against Hartford seeking to recover damages for substantially prevailing in her lawsuit for payment of the insurance policy benefits as she had obtained a judgment requiring payment of the insurance policy proceeds and seeking compensation for Hartford's bad faith claims handling conduct and violation of the West Virginia Unfair Trade Practices Act, W.Va. Code §33-11-4(9) and West Virginia common law. App. 53-73.

On October 12, 2012, Hartford removed Mrs. York's claims to the United States District Court for the Southern District of West Virginia asserting diversity

---

[5] The Circuit Court of Mingo County, West Virginia entered an Order on August 6, 2012 approving Mrs. York's Petition and approved the settlement with the Miller defendants. App. 43-48.

jurisdiction. App. 18-86. On October 19, 2012, Hartford filed a Motion to Dismiss Plaintiff's Second Amended Complaint and a Motion for Relief from Judgment Pursuant to Rule 60(b). App. 87-264; 265-324. On November 6, 2012, Mrs. York moved to remand the matter to the Circuit Court of Mingo County, West Virginia because Hartford's removal was untimely, being filed seventy-seven days after dismissal of the non-diverse parties at a hearing of which Hartford had actual notice. App. 325-364.

On October 3, 2013, the district court entered an order denying Mrs. York's Motion to Remand, granting Hartford's Motion for Relief from Judgment Pursuant to Rule 60(b), setting aside the August 6, 2012 Judgment and denying Hartford's Motion to Dismiss. App. 528-547. Having set aside the August 6, 2012 Judgment which found Hartford had breached the insurance contract and failed to pay the $100,000 in UIM benefits due and owing, the district court also granted Mrs. York leave to amend her complaint to reinstate her breach of contract claim. App. 547. Accordingly, Mrs. York filed her Third Amended Complaint on October 31, 2013 and re-asserted her breach of contract claim, in addition to reasserting her claims for Hartford's bad faith claims handling conduct, violation of the West Virginia Unfair Trade Practices Act and for substantially prevailing damages should she prevail in her claim for contractual benefits. App. 567-579. Hartford tendered payment of its $100,000 UIM coverage policy limit to Mrs. York by presenting a

check to Mrs. York's counsel on November 15, 2013, thus mooting Mrs. York's breach of contract claim and providing the factual predicate for her to recover substantially prevailing damages. App. 642, 753.

On December 6, 2013, Hartford moved for summary judgment arguing that Kentucky law applies to any claim which may be asserted by Mrs. York because the automobile insurance policy providing underinsured motorist coverage benefits was issued to Kentucky residents and that, under Kentucky law, Mrs. York's claims fail as a matter of law. App. 643-753. Ms. York responded on December 19, 2013 that West Virginia law applied to the dispute. Further, even if Kentucky law was applied, evidence existed in the record before the Court that was sufficient to survive summary judgment under Kentucky bad faith law. App. 896-990. On March 4, 2014, the district court granted Hartford's Motion for Summary Judgment, entered judgment in favor of Hartford and dismissed Mrs. York's case from its docket. App. 1249-1262. Ms. York now appeals both the district court's October 3, 2013 interlocutory order denying her Motion to Remand and setting aside both the June 12, 2012 Default Order and the August 6, 2012 Default Judgment and the district court's March 4, 2014 Order granting judgment in favor of Hartford under Kentucky law. App. 1263-1264.

## SUMMARY OF ARGUMENT

The United States District Court for the Southern District of West Virginia erred when it failed to remand this matter to the Circuit Court of Mingo County, West Virginia as untimely removed. Hartford cannot delay the triggering of 28 U.S.C. §1446(b)'s thirty day period for removal by ignoring the diversity creating event, an event of which it had actual notice.

The district court further erred by sanctioning Hartford's decision to ignore the authority of the courts of West Virginia and setting aside both the June 12, 2012 Default Order and the August 6, 2012 Default Judgment by finding "excusable neglect" and "meritorious defense" on the part of Hartford. In excusing Hartford's misconduct, the district court further erred by faulting Mrs. York's counsel for failing to specifically advise Hartford it was in default and ignoring documentary evidence that Mrs. York's counsel had served Hartford with documents listing it as a named defendant in the lawsuit, documents which were in Hartford's claim file no later than August 1, 2012. App. 246-261, 534-535, 537, 539-540. Further, the district court erred by improperly treating the August 6, 2012 Default Judgment as breach of contract damages noting that the award exceed the applicable policy limit "by 41 times" and, by failing to recognize the distinction between damages arising from the untimely death of Adam York as a result of the negligence of Miller, an underinsured motorist, and damages for breach of

11

contract. App. 538-539. The full damages sustained as result of the death of Adam York, less the underlying liability policy limits and the underinsured motorist coverage contractual benefits, constitute extra-contractual damages recoverable where an insured substantially prevails in a lawsuit to recover insurance policy proceeds. *See* syl. pts. 6 & 7, *Marshall v. Saseen*, 450 S.E.2d 791 (W.Va. 1994).

After improperly retaining jurisdiction over Mrs. York's claims where subject matter jurisdiction was lacking, the district court further erred by determining that Kentucky law governs the claims. Under applicable choice of law principles, West Virginia law would apply to Mrs. York's bad faith tort claims because West Virginia has the most significant relationship to this dispute. This dispute arises from a claim for payment of underinsured motorist coverage insurance policy benefits stemming from the wrongful death of Adam York in a West Virginia wreck caused by the negligence of a West Virginia resident and presented under a policy of insurance issued by an Indiana insurer, from its Connecticut office and handled by claim representatives in Indiana. App. 107, 901, 956, 977-980. Kentucky's only connection to the dispute is the fact that the policy of insurance was issued to Kentucky residents.

Finally, even if Kentucky law is applied, Mrs. York has presented sufficient factual evidence of misconduct on the part of Hartford to demonstrate the existence of a genuine issue of material fact that Hartford acted in bad faith under Kentucky

law. Hartford's liability was not "fairly debatable" and Hartford was acting with reckless disregard of its insured's rights.  The evidence presented to the district court demonstrated Hartford: (1) knew of the offer of the tortfeasor's $100,000 liability limit no later than January 25, 2013; (2) knew that the offer was contingent upon a waiver of Hartford's subrogation interest; (3) knew that Mrs. York requested its consent to the settlement; (4) evaluated Mrs. York's claim as exceeding $800,000 *at that time*; (5) failed to respond to Mrs. York in any manner; (6) attempted to invoke an assumption of risk defense and transfer liability to West Virginia residents at a time when it knew its coverage had been triggered; (7) forced Mrs. York to file suit to recover policy benefits; (8) ignored actual notice of the Writ of Inquiry; and (9) never presented a check representing payment of the underinsured motorist coverage benefits until twenty-two months after notification of the tender of the tortfeasor's policy limit and demand for payment of Hartford's policy benefits.  *Curry v. Fireman's Fund Ins.*, 784 S.W.2d 176, 178 (Ky. 1989); *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.2d 368, 375-376 (Ky. 2000).  At a minimum, this evidence demonstrates a genuine issue of material fact and the district court erred in granting summary judgment in favor of Hartford.

13

# ARGUMENT

**I.    The district court erred in denying Mrs. York's Motion to Remand this case to the Circuit Court of Mingo County, West Virginia where Hartford, a defaulted party, had actual notice of an August 6, 2012 hearing wherein it could have first ascertained diversity jurisdiction, failed to appear and then removed the claims seventy-seven days later, on October 12, 2012, in violation of 28 U.S.C. §1446(b).**

**Standard of Review:**

This Court reviews *de novo* questions relating to subject matter jurisdiction, "including those relating to the propriety of removal." *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 815-16 (4th Cir. 2004), *quoting Mayes v. Rapoport*, 198 F.3d 457, 460 (4th Cir. 1999). Hartford bears the burden of demonstrating diversity jurisdiction. *Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction is strictly construed because it raises significant federalism concerns. *Mulcahey*, 29 F.3d at 151. Any doubts regarding the propriety of removal must be resolved in favor of remand. *Dixon*, 369 F.3d at 816; *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999).

**Discussion:**

Pursuant to 28 U.S.C. §1446(b), a notice of removal must "be filed within thirty days after receipt by the defendant, through service or otherwise, of a . . . paper from which it may first be ascertained that the case is one which is or has become removable[.]" The thirty-day window for removal is designed to prevent "undue delay in removal and the concomitant waste of state judicial resources."

14

*Lovern v. Gen. Motors Corp*., 121 F.3d 160, 163 (4th Cir.1997). When ascertaining timeliness of removals, courts are generally not inclined to be rigid but instead emphasize "substance over form." *Allison v. Meadows*, 2005 WL 2016815, *2 (S.D.W.Va. Aug. 22, 2005). A written order dismissing the non-diverse defendants is not necessary; knowledge of a settlement or a court's announcement from the bench is sufficient. *Id*.; *Yarnevic v. Brink's Inc.*, 102 F.3d 753, 755 (4th Cir. 1996) ("The 'motion, order or other paper' requirement is broad enough to include any information received by the defendant, 'whether communicated in a formal or informal manner.'"); *King v. Kayak Manuf. Corp.*, 688 F.Supp. 227, 229-30 (N.D.W.Va. 1988) (approval of settlement in court hearing is sufficient; written order not required to trigger removal period) *McMahon v. Advance Stores Co., Inc.,* 2008 WL 183715, *6 (N.D.W.Va. Jan. 18, 2008) (pronouncement by state court judge during a proceeding of record is sufficient to trigger 30 day removal period); *Sun Trust Mort., Inc. v. Pippin*, 2012 WL 5023109, *2 (W.D.N.C. Oct. 16, 2012) (notice of hearing of foreclosure action sufficient to trigger removal period).

Hartford had actual notice that a hearing was to be held on August 6, 2012 for the purpose of obtaining court approval to accept the Millers' liability policy limit and dismiss all pending claims against the Miller defendants, the only allegedly non-diverse parties, rendering them, at most, nominal parties in any continued action to recover the Hartford's UIM policy benefits.  App. 246-261.

15

Hartford *chose* to ignore the notice and not to appear. The district court's attempt to distinguish *King* and similar cases by stating that Hartford was not present at the August 6, 2012 hearing misses the mark and sanctions Hartford's misconduct of turning a blind eye both to the authority of the courts of West Virginia and to the diversity creating event.

In *Payne v. Forest River, Inc.*, 2014 WL 1120251 (M.D.La. March 20, 2014), the court found that a defaulted party's failure to appear at a hearing at which information is produced establishing diversity jurisdiction triggers the thirty day removal period even if the defaulting party does not actually learn of the information until later. *Id.* at *2-3. Thus, Hartford had constructive notice of the diversity creating event on August 6, 2012 and its thirty day period for removal was triggered at that time notwithstanding its argument that it did not obtain a copy of the August 6, 2012 order until September 28, 2012. Accordingly, Hartford's October 12, 2012 Notice of Removal was untimely under 28 U.S.C. §1446(b) and the district court did not have subject matter jurisdiction over Mrs. York's claims. The district court erred in sanctioning Hartford's failure to appear at a hearing for which it had notice and erred in denying Mrs. York's Motion to Remand.

16

**II.    The district court abused its discretion and erred in setting aside a $4,127,615.80 judgment entered by the Circuit Court of Mingo County, West Virginia which properly valued the damages sustained by the Estate of Adam R. York as a result of the negligence of an underinsured driver.  Not only are the district court's findings of excusable neglect and meritorious defense unsupported by the facts but the decision demonstrates that it was impacted by improper considerations and a fundamental misunderstanding of West Virginia law.**

**Standard of Review:**

The district court erred in granting Hartford's Rule 60(b) Motion to set aside the Circuit Court of Mingo County, West Virginia's August 6, 2012 Default Judgment Order. Ordinarily, "[r]ule 60(b) motions are addressed to the sound discretion of the district court and 'will not be disturbed on appeal absent a showing of abuse of that discretion.'" *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 810 (4th Cir. 1988), *quoting Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir. 1987). In order to prevail on a Rule 60(b) motion, the moving party must demonstrate: (1) that its motion is timely; (2) that it has a meritorious defense; (3) that the opposition party will not be prejudiced; and (4) one or more of the six grounds for relief set forth in Rule 60(b).

**Discussion:**

The district court focused upon two findings in setting aside the default judgment: (1) Mrs. York's counsel did not advise Hartford it was in default and (2) "the judgment exceeds [the] insurance policy limitation by 41 times." App. 537-40.

17

As to this first crucial erroneous finding, the district court ignores the undisputed fact that the Notices of the *two* August 6, 2012 hearings and Mrs. York's Petition relating to the settlement with Miller were provided to Hartford and were in Hartford's claim file no later than August 1, 2012. App. 246-261. All three of these documents specifically listed Hartford as a named defendant in Mrs. York's case pending in the Circuit Court of Mingo County. *Id.* Hartford was specifically served with Notice that a Writ of Inquiry relating to the default in accordance with W. Va. R. Civ.P. 55(b)(2). *Id.* Hartford ignored all of these documents with the only explanation argued below was that it did not understand their meaning. App. 222-223; 934-35. A person (or corporation) is presumed to know the law. *See, e.g., Jacobson v. United States,* 503 U.S. 540, 550, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992); *United States v. Aquino–Chacon,* 109 F.3d 936, 938 (4th Cir.*), cert. denied*, 522 U.S. 931, 118 S.Ct. 335, 139 L.Ed.2d 260(1997). Mrs. York's counsel had no legal obligation under West Virginia law or any other law to call and inform Hartford that it was in default or to otherwise advise Hartford of its obligations under West Virginia law, a state in which it admittedly does business. Hartford ignored the clear notice that it was a defendant in Mrs. York's lawsuit. The district court abused its discretion by excusing Hartford's clear misconduct and instead placing blame on Mrs. York's counsel for not specifically calling and advising Hartford that it was a defendant in default notwithstanding the

18

fact that Mrs. York's counsel served Hartford with three additional documents in addition to the Amended Complaint clearly disclosing that it was a named defendant.  App. 33-42; 246-261.  It is also important to point out that Hartford is a savvy national insurance carrier, not a "Joe Smith" defendant who does not understand his or her obligations when sued.  Hartford has both in-house and external legal counsel at its disposal at all times.  For it to claim that it did not understand the implication of the documents is simply not credible.

Secondly, the district court's finding that Hartford has demonstrated a "meritorious defense" because the judgment exceeded the policy limit by 41 times demonstrates a fundamental misunderstanding of West Virginia law. Under West Virginia law, Hartford may be held liable for damages sustained in excess of its insurance policy limits where the Mrs. York substantially prevails in an action to recover insurance policy benefits. Syl. pt. 7, *Marshall v. Saseen*, 450 S.E.2d 791 (W.Va. 1994). Mrs. York substantially prevailed on her claim for insurance policy proceeds.  App. 62-69. Even if Hartford's default is not considered, Hartford paid the $100,000 UIM policy benefits on November 15, 2013 after over one and a half years of litigation.  App. 642, 753.  Whether by default or payment after extensive litigation, Mrs. York substantially prevailed in her lawsuit to recover policy benefits, rendering Hartford liable for the full damages sustained by the Estate of

19

Adam R. York as a result of his tragic death. Syl. pt. 7, *Marshall v. Saseen*, 450 S.E.2d 791 (W.Va. 1994).

The August 6, 2012 Default Judgment Order represented the damages sustained by the Estate of Adam R. York as a result of his wrongful death stemming from the negligence of an underinsured motorist, Miller. App. 64-69. Mrs. York was entitled to recover those damages, less the liability and underinsured motorist coverage benefits limits, from Hartford as a direct result of having to file suit to obtain the policy proceeds and substantially prevailing in her claim for policy proceeds. *Marshall v. Saseen*, 450 S.E.2d 791 (W.Va. 1994). The district court abused its discretion and clearly erred by treating these damages as pure breach of contract damages subject to Hartford's policy limit.

**III.    The district court erred in applying Kentucky law and refusing to apply West Virginia law to this bad faith claim handling lawsuit where the underlying claim arose in West Virginia, arose from the negligence of a West Virginia resident, was litigated in West Virginia, was handled by Hartford's representatives in Indiana and Kentucky's only contact to the dispute was that the applicable policy of insurance was issued to Kentucky residents.**

**Standard of Review:**

Where choice of law issues are resolved upon a motion for summary judgment, this Court reviews the district court's decision *de novo,* viewing the facts and inferences drawn therefrom in the light most favorable to the non-moving party. *Seabulk Offshore, Ltd. v. American Home Assur. Co.*, 377 F.3d 408, 418 (4th

Cir. 2004). As the forum state in this diversity action, West Virginia choice of law principles must be followed. *Perini/Tompkins Joint Venture v. Ace American Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013).

**Discussion:**

Mrs. York's contractual claims were fully and completely resolved on November 15, 2013 when Hartford finally tendered payment of the $100,000 limit of its UIM coverage policy benefit. App. 642, 753. As such, the only claims remaining at the time of the district court's March 4, 2014 dismissal order were her common law and statutory bad faith claims.

Under West Virginia law, both common law and statutory bad faith claims are tort claims. *Wilt v. State Automobile Mutual Insurance Company*, 506 S.E.2d 608, 609-10 (W.Va. 1998); *Noland v. Virginia Insurance Reciprocal*, 686 S.E.2d 23, 34-35 (W.Va. 2009). Similarly, bad faith claims are tort claims in Kentucky, the state whose law the district court erroneously found applicable to this dispute. *Curry v. Fireman's Fund Ins.*, 784 S.W.2d 176, 178 (Ky. 1989). Thus, the district court erred in focusing on a contractual relationship between the parties in conducting its conflict of law analysis and finding it "illogical" to apply West Virginia tort law to claims arising from a contract governed by Kentucky law. App. 1257.

21

West Virginia adheres to the principles of *lex loci delicti* for tort cases. Syl. pt. 1, *Paul v. National Life*, 352 S.E.2d 550 (W.Va. 1986) ("In general, this State adheres to the conflicts of law doctrine of lex loci delicti."). Under *Paul*, the injury underlying this dispute unquestionably occurred in West Virginia, the place where Adam R. York died, the place where the party responsible for his death faced legal liability, the place where the beneficiaries of his Estate sought legal redress for his death, the place where all claims handling conduct at issue was directed and the place where the Writ of Inquiry was held.

On occasion, West Virginia will turn to the analysis set forth in sections 145 and 6 of the Restatement (Second) of Conflicts of Laws to address "particularly thorny" issues. *Oakes v. Oxygen Therapy Services*, 363 S.E.2d 130, 131 (W.Va. 1987). In all cases, however, West Virginia will refuse to apply the law of another state which contravenes West Virginia public policy. *Paul*, 352 S.E.2d at 556. Application of the Restatement factors,[6] as outlined in *Oakes*, demonstrates that

---

[6] The Restatement (Second) of Conflict of Laws' broad, multi-factor test for tort claims provides in Section 145, General Principles:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> > (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties;

West Virginia law should apply to Mrs. York's claims because it has the most significant relationship to Hartford's claims handling misconduct. The district court erred in finding that Mrs. York's sole argument for application of West Virginia law was that Adam's death occurred in West Virginia and that Kentucky had the most significant relationship to this claims handling dispute. App. 1257.

Section 145's contact considerations regarding the place of the injury, the place of the injury causing conduct, residency of the parties and center of the relationship do not support the district court's application of Kentucky law to this dispute. The "injury" at issue occurred in West Virginia where Mrs. York and the other statutory beneficiaries experienced the annoyance, aggravation, inconvenience and emotional distress of the August 6, 2012 Writ of Inquiry, a proceeding which would not have occurred but for Hartford's intentional

---

and (d) the place where the relationship, if any, between the parties is centered.
Section 6, Choice of Law Principles, provides:
(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
(a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations;(e) the basic policies underlying the particular field of law;(f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied.
*Oakes*, 363 S.E.2d at 132.

23

misconduct in failing to pay the claim in January 2012, failing to answer the March 9, 2012 Amended Complaint and ignoring clear notice that it was a defendant in default in Mrs. York's lawsuit.

The injury causing claim handling misconduct originated in Indiana on behalf of an Indiana insurer, who had issued a policy from its Connecticut office, and was, at all times, directed at West Virginia, its residents and its courts. App. 107, 897-899, 901, 905, 923-924, 937, 941-942, 954, 956, 977-978, 980. *All* of Hartford's communications relating to this claim were initiated in Indiana and directed to West Virginia, including communicating with Mrs. York's West Virginia counsel and seeking consult from its own chosen West Virginia attorneys on West Virginia law. App. 897-899, 901, 905, 917, 923-924, 937, 954, 956. Hartford's claim handling misconduct was, at all times, aimed at invoking West Virginia substantive law to avoid liability for a claim arising in West Virginia involving the death of a person with significant West Virginia contacts which occurred in West Virginia and which was prosecuted in West Virginia courts, the only legitimate forum.[7]   App. 897-899, 901, 905, 917, 923-924, 937, 954, 956, 984-986. Hartford also attempted to rely upon differences between the substantive laws of West Virginia and Kentucky law to illegitimately deny Mrs. York's claim outright by attempting to force Mrs. York to create a forfeiture of UIM benefits

---

[7] Adam York went to school in West Virginia and worked in West Virginia despite the fact that he was a Kentucky resident prior to his death.  App. 984-986.

under Kentucky law.[8] Thus, the relationship between Mrs. York, in her role as Adminstratrix of the Estate of Adam R. York, and The Hartford is centered in West Virginia.[9]

Similarly, application of the Section 6 factors indicate that the district court erred in finding Kentucky law governed. The only connection Kentucky has to this case is that the insurance policy at issue was issued to Adam's parents who are Kentucky residents. The interests of the interstate system are met by applying West

---

[8] Hartford's defense was focused upon an argument that Mrs. York's January 23, 2012 letter did not and could not constitute a "*Coots*" letter under Kentucky law because the settlement with Miller had not been finalized and approved by a West Virginia Court. This defense demonstrates a fundamental and irreconcilable conflict in the laws between the two states. A West Virginia court's provision of authority to accept a settlement with a tortfeasor under the Wrongful Death Statute operates to release the tortfeasor. W.Va. Code § 55-7-6, and -7. Thus, the triggering event for payment of UIM benefits that Hartford claims was missing would effectively operate to negate Hartford's subrogation claim – the very claim a *Coots* letter is designed to protect. *Kentucky Farm Bureau Mut. Ins. Co. v. Young*, 317 S.W.3d 43, 47 (2010) ("A *Coots* notice is designed to give a UIM insurance carrier the opportunity to protect its subrogation rights against the tortfeasor and the tortfeasor's insurer."). Releasing the tortfeasor without giving Hartford the opportunity to preserve its subrogation interest would operate as a forfeiture of the UIM policy benefits under Kentucky law. *Young*, 317 S.W.3d at 49.

[9] Adam York's Estate was created for the sole purpose of seeking compensation for Adam York's untimely and tragic death caused by the negligence of a West Virginia resident in the courts of West Virginia. The Estate's claim under The Hartford policy was presented in connection with a West Virginia accident, was litigated in a West Virginia court and was prosecuted by a West Virginia attorney. It is critical to remember that Adam York is not and never has been a plaintiff to this litigation and did not bring the claim. The Estate did. <u>All</u> of The Hartford's dealings with the entity who brought the claim and who litigated the claim, *i.e.* The Estate, have been in West Virginia.

Virginia law to this claim handling dispute. West Virginia has articulated a clear and substantial public policy applicable to *all* insurers doing business in the State. *See*, W. Va. Code § 33-11-1; syl pt. 2, *Hawkins v. Ford Motor Co.*, 566 S.E.2d 624 (W. Va. 2002); *White v. Lowe's Home Centers, Inc.*, 29 F.Supp.2d 330, 333 (N.D.W.Va. 1998). It is undisputed that Hartford does business in West Virginia.

Conversely, the interests of Kentucky in applying its law to this dispute are negligible. As discussed below, Kentucky recognizes first-party bad faith claims. Kentucky, however, has basically no involvement in this claim. Liability of a Kentucky resident is not at issue. No Kentucky claim representatives were involved. No Kentucky lawyers were involved. A lawsuit was not filed in a Kentucky court. Mrs. York had a justifiable expectation that: (1) the claim would be handled fairly and promptly in accordance with the law of the state in which the claim arose and was made and (2) that Hartford would not rely upon conflicting technicalities between Kentucky and West Virginia law to attempt to avoid otherwise clear liability. By contrast, Hartford should expect to be held accountable under the laws of all states in which it does business.

Kentucky's non-involvement in this claim except for the fact that the insurance policy was issued to Kentucky residents renders the district court's reliance upon *Yost v. Travelers Ins. Co.*, 181 F.3d 95, 1999 WL 409670 (4th Cir. 1999), meaningless. *Yost* involved a third-party bad faith claim arising from a

NAV

claim involving an Ohio resident injured by a vehicle registered and insured in Pennsylvania and handled by the insurer's Pennsylvania claims representatives. *Yost*, at *1, 3. This Court found that the conduct causing injury – the inappropriate claims handling conduct – *occurred in Pennsylvania* where the claim was adjusted. *Yost*, at *3. Critical to this Court's decision in *Yost* was the fact that Pennsylvania and West Virginia law differed significantly – Pennsylvania barred third-party bad faith claims, West Virginia recognized the claims. *Yost*, at *4. A fair reading of *Yost* does not support the district court's conclusion that the state where the insurance contract was delivered is the sole determining factor for conflict of law purposes in bad faith claims.  App. 1257-1258.

Unlike in *Yost*, Mrs. York's claim involves a first-party claim arising from the negligence of a West Virginia resident which caused the death of Adam York in West Virginia and which was handled in Indiana. Both West Virginia and Kentucky recognize first party bad faith claims precluding the concern that application of West Virginia law would conflict with clear Kentucky law. Kentucky's only connection to the dispute is that it is the state where an insurance policy, issued by an Indiana insurer from its Connecticut office, was delivered. App. 107, 978-980.  Thus, Kentucky may not even come in second place in looking at which state has the most significant interest. Second place would likely be Indiana, the state where Hartford is incorporated and the state where its claims

representative were employed and physically located.   Accordingly, the district court erred in choosing to apply Kentucky bad faith law.

**IV.    The district court erred in its application of Kentucky law to dismiss, on summary judgment, Mrs. York's first-party bad faith claims arising from Hartford's handling of a claim for underinsured motorist coverage benefits arising from the death of Adam R. York.  Even if Kentucky law were applicable, which it is not, Mrs. York presented sufficient evidence of Hartford's claim handling misconduct to survive summary judgment.**

**Standard of Review:**

Even if Kentucky law applies, genuine issues of material fact exist mandating reversal of the district court's grant of summary judgment and dismissal of Mrs. York's claims. The district court's grant of summary judgment is reviewed *de novo* utilizing the same legal standards as the district court. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). Summary judgment is only appropriate where there is no genuine issue of material fact and Hartford is entitled to judgment as a matter of law.  *Glynn*, 710 F.3d at 213. In determining whether a genuine issue of material fact exists, all facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to Mrs. York.  *Bonds v. Leavitt,* 629 F.3d 369, 380 (4th Cir. 2011).

**Discussion:**

If Mrs. York produces "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]", summary judgment must be denied. "[A]t the summary judgment stage the judge's function is not ... to weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct 2505, 91 L.E.2d 202 (1986). The documentary evidence from Hartford's own claim file and the admissions of its representatives produced by Mrs. York in opposition to Hartford's Motion for Summary Judgment constitute concrete evidence from which a reasonable jury could find that liability was not fairly debatable and that Hartford acted intentionally, unreasonably, outrageously and in reckless disregard of Mrs. York's rights. App. 896-990. Thus, the district court erred in granting summary judgment.

Kentucky recognizes both common law claims for insurance bad faith and claims for violation of the Kentucky Unfair Claims Settlement Practices Act, Ky. Rev. Stat. §304.12-230, [hereinafter "UCSPA"]. Like the West Virginia Unfair Trade Practices Act, the Kentucky UCSPA "is intended 'to protect the public from unfair trade practices and fraud' and 'imposes what is generally known as the duty of good faith and fair dealing owed by an insurer to an insured.' " *Phelps v. State Farm Mut. Auto. Ins. Co.*, 680 F.3d 725, 731 (6th Cir. 2013) (internal citations omitted) *quoting Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 515 (Ky. 2006); *see also* W. Va. Code § 33-11-1; *White v. Lowe's Home Centers, Inc.*, 29 F.Supp.2d 330, 333 (N.D.W.Va. 1998) ("Ultimately, the UTPA exists for the purpose of protecting the public, and any insurer violating the provisions of the UTPA . . . can

be held liable for such violations."). "The UCSPA fundamentally requires that 'a good faith attempt be made to effectuate a prompt, fair and equitable settlement.'" *Phelps*, 680 F.3d at 731, *quoting Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 454 (Ky. 1999). Kentucky requires its UCSPA[10] to be liberally construed so as to effectuate its purpose. *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988). Demonstration of a general business practice is not a required element of a Kentucky statutory claim. *Simpson v. Travelers Ins. Cos.*, 812 S.W.2d 510, 512 (Ky. 1991). Thus, misconduct in the handling of single claim is

---

[10] The Kentucky USCPA prohibits conduct such as:

(1) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(4) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(5) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(7) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds; ....

(14) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim....

Ky. Rev. Stat. § 304.12–230.

sufficient to find an insurer liable for both common law and statutory bad faith without a further showing that the conduct complies with the insurer's general business practices.

The standard for bring a UCSPA claim and a common law claim is the same in Kentucky. *Knotts*, 197 S.W.3d at 515. In order to bring a common law bad faith claim:

> [A]n insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith to pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.... [A]n insurer is ... entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts.

*Curry v. Fireman's Fund Ins.*, 784 S.W.2d 176, 178 (Ky. 1989), incorporating by reference Justice Leibson's dissent, in *Federal Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844, 846-47 (Ky. 1986); *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). Although elements of a claim may be "fairly debatable," an insurer is required to debate the matter fairly. *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.2d 368, 375 (Ky. 2000). Under Kentucky law, "[t]he appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was

31

unreasonable." *Johnson*, 36 S.W.3d at 376 (internal quotation marks omitted). To comply with their obligations, insurers "should not force an insured to go [through] needless adversarial hoops to achieve [her] rights under the policy. [They] cannot lowball claims or delay claims hoping that the insured will settle for less." *Id.* "[M]ere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception .... or evidence supporting a reasonable inference that the purpose of the delay was to extort a more favorable settlement or to deceive the insured with respect to the applicable coverage." *Glass*, 996 S.W.2d at 452–53 (citation omitted).

The Kentucky Supreme Court has stated "[a]lthough matters regarding investigation and payment of a claim may be 'fairly debatable,' an insurer is not thereby relieved from its duty to comply with the mandates of the [Act]." *Johnson*, 36 S.W.3d at 375. "An insurance company still is obligated under the [Act] to investigate, negotiate, and attempt to settle the claim in a fair and reasonable manner." *Id.* Moreover, "whether a claim or the amount of a claim is fairly debatable is a question of fact for the jury." *Id*. at 376.

Rather than addressing Hartford's Motion for Summary Judgment in light of the standards established by the Kentucky Supreme Court, the district court accepted Hartford's invitation to focus its analysis on the subsequent decision of a Kentucky Court of Appeals in *United Services Automobile Association v. Bult*, 183

32

S.W.3d 181 (Ky. Ct. App. 2003), which the district court characterized as establishing a heightened "pleading" standard for bad faith claims. App. 1259. It must be noted at this point that Mrs. York's claims were pled under West Virginia law. App. 567-579. Accordingly, Mrs. York's Third Amended Complaint could never be construed as meeting Kentucky's standard for pleading a Kentucky bad faith claim as Kentucky claims were not asserted. The district court's March 4, 2014 Memorandum Order and Opinion was the first time the district court announced that it would apply Kentucky law to the claims handling portion of the parties dispute. App.1253, 1258. Accordingly, it should not have dismissed Mrs. York's claims for failing to meet Kentucky's pleading standards without providing Mrs. York with the opportunity to amend her complaint upon the district court's determination that the dispute would be governed by Kentucky law. To the extent the district court utilized a misnomer when characterizing its analysis of a "pleading" standard and instead was viewing the evidence presented to ascertain whether sufficient evidence existed in the record to avoid summary judgment under Kentucky law, the district court still erred.

The facts, when viewed in the light most favorable to Mrs. York, are such that a jury could find that Hartford lacked a reasonable basis in law or fact for denying the claim and acted in reckless disregard of whether such basis existed. *See*, *Curry*, 784 S.W.2d at 178; *Johnson*, 36 S.W.2d at 376. The facts, when

33

viewed in the light most favorable to Mrs. York, are such that a jury could find that Hartford acted outrageously and with an intent to deceive Mrs. York. *Glass*, 996 S.W.2d at 452-53.

The evidence presented demonstrates that this is not a case of mere delay as characterized by the district court and Hartford. App. 1258-1260. It is a case of intentional misconduct. This is a case where Hartford evaluated the non-economic value of the claim to be between $800,000 and $1,000,000 on January 25, 2012 – the very day it acknowledges receiving notice of the proposed settlement for the tortfeasor's $100,000 liability limits and Mrs. York's request for its consent to enter the settlement. App. 909-912; 987-990. As of January 25, 2012, Hartford had actual knowledge that the tortfeasor's $100,000 liability limits had been offered, actual knowledge that its underinsured motorist coverage benefits were $100,000 and that the non-economic value of the claim alone, without considering any economic losses associated with the death of a twenty-two year old male already earning in excess of $42,000 a year, exceeded the combined liability and underinsured motorist limits by at least $600,000. App. 901, 903, 909-913, 987-990. Liability to Mrs. York was not fairly debatable at that moment. These facts are sufficient for a jury to determine that Hartford's decision to refuse to pay the claim at that time was intentional, outrageous and exhibited a reckless indifference to Mrs. York's rights. However, there is more evidence of intentional misconduct

34

on the part of Hartford.

There is also a documented intent to deceive and mislead Mrs. York and avoid payment of its meager $100,000 policy benefits at all costs. *See*, *Budde v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 1695838, *3 (W.D.Ky. May 4, 2011), *quoting Carruba v. Transit Cas. Co.*, 443 F.2d 260, 261 (6th Cir. 1971) ("Bad faith must be more than bad judgment or negligence—it involves 'moral obliquity,' 'a breach of a known duty through some motive of interest or ill will' or 'actual intent to mislead or deceive another.' "); App. 897-899, 901, 917, 919-922, 926, 937, 954, 962-968, 987-990. Upon notification that its policy limit was due and owing, Hartford engaged in a deliberate attempt to find a way to avoid liability for payment of the contractual benefit either by invoking an assumption of risk defense or by transferring its liability to others. App. 897-899, 901, 917, 937.

Hartford failed to notify Mrs. York that it deemed her January 23, 2012 letter insufficient to constitute a "*Coots*" letter under Kentucky law.[11] A "*Coots*" letter is named after the Kentucky Supreme Court decision in *Coots v. Allstate Ins. Co.*, 853 S.W.2d 895, 899 (Ky. 1993) and "is designed to give a UIM insurance carrier the opportunity to protect its subrogation rights against the tortfeasor and the tortfeasor's insurer." *Kentucky Farm Bureau Mut. Ins. Co. v. Young*, 317

---

[11] Hartford's position that the January 23, 2012 letter did not meet the requirements of a *Coots* letter was the primary focus of Hartford's defense to Mrs. York's claims before the district court.

S.W.3d 43, 47 (Ky. 2010).  Releasing the tortfeasor without giving The Hartford the opportunity to preserve its subrogation interest would operate as a forfeiture of the UIM policy benefits under Kentucky law.  *Young*, 317 S.W.3d at 49.  The record reflects that Hartford treated the January 23, 2012 letter as a *Coots* letter by immediately evaluating the value of Mrs. York's claim and investigating any subrogation claim it may have.  App. 901, 917, 937, 987-990.  Hartford's claim representative handling Mrs. York's claim **admitted** she should have responded to the January 23, 2012 letter.  App. 919.

> In *Young*, the Kentucky Supreme Court expressly stated:

> A cautionary note is appropriate. The rule that a **Coots notice** must contain accurate information regarding the proposed settlement i**s intended to protect the insurer's ability to protect its subrogation interests, not for use as a weapon to deny its policyholders benefits**. **In the limited circumstances where the UIM insurer has reason to doubt the accuracy of the information contained in a** *Coots* **notice, prudence places a responsibility on the UIM insurer to take reasonable measures to resolve the doubt**, which may include a request for clarification of the information needed to make its decision to advance its own funds in place of the tortfeasor's. Otherwise, the insurer may be found to have waived its right to deny UIM coverage after ignoring a defective notice. We believe putting this burden on the insurer and giving the policyholder the opportunity to eliminate any confusion caused by his faulty *Coots* notice is within the spirit of the policies and purposes behind the Motor Vehicle Reparations Act. KRS 304.39–010.

*Young*, 317 S.W.3d at 48-49 (emphasis added). Hartford's primary argument in defense of Mrs. York's claims in the district court was that the January 23, 2012 letter could not constitute a proper *Coots* letter because the proposed settlement

36

identified therein had not yet been approved by a West Virginia court and Hartford had no obligation to do anything until the court approval had occurred. The district court's implicit acceptance of these arguments when finding Mrs. York failed to prove outrageous and intentional misconduct is contrary to Kentucky Supreme Court's pronouncements in both *Young* and *Coots*. As recognized in *Coots* itself, Kentucky will not construe its UIM statute "literally and without regard to [a] resulting absurdity" or unreasonable conclusion. *Coots*, 853 S.W.2d at 899. That is exactly what Hartford and the district court did.

Entry of an order by a West Virginia court permitting Mrs. York to accept the Miller settlement would also result in Miller's release and negate Hartford's subrogation claim. W.Va. Code §§ 55-7-6, -7. By negating Hartford's subrogation right prior to triggering Kentucky's thirty day statutory period for Hartford's subrogation decision, the West Virginia court approval Hartford argued was required would operate to forfeit Mrs. York's entitlement to UIM coverage. *See Coots*, 853 S.W.2d at 899 (1993); *Young*, 317 S.W.3d at 49 (forfeiture of UIM claim for failure to provide adequate notice); *Malone v. Kentucky Farm Bureau Mut. Ins. Co.*, 287 S.W.3d 656, 659 (Ky. 2009) (acceptance of settlement required under *Coots*). Forfeiting a legitimate claim through strict compliance with *Coots* under the unique circumstances of this case constitutes an absurdity and an unreasonable result.

37

Hartford never raised *Coots* to Mrs. York in any manner prior to seeking to have the August 6, 2012 default judgment set aside nor did Hartford advise Mrs. York that it deemed the January 23, 2012 letter insufficient in any manner. Hartford's admitted failure to advise Mrs. York of any alleged deficiency in light of its knowledge of the proposed settlement and evaluation of the claim may be deemed to be an intentional misrepresentation of a pertinent fact and failure to appropriately respond, both done in reckless disregard of Mrs. York's rights. Ky. Rev. Stat. § 304.12–230 (1), (2). Similarly, Hartford's retroactive invocation of *Coots* in an attempt to avoid legal liability for its bad faith claim handling conduct is further evidence that it has acted intentionally and with indifference to Mrs. York's rights at all times since receiving notice of the claim on October 21, 2011. App. 896.

There is no evidence that Hartford's failure to respond to Ms. York's January 23, 2012 letter was a mistake. App. 919. Hartford's claim manager testified in August 2013 that it still had no duty to respond or pay the UIM benefits. App. 962-968. Mrs. York's January 23, 2012 demand was clearly reasonable in light of Hartford's own evaluation of the case and provided Hartford with the opportunity to preserve its subrogation interests (the purpose of *Coots*) prior to the West Virginia court extinguishment of Hartford's subrogation rights upon approval of the Miller settlement. App.902-903. Hartford's decision to

38

ignore the January 23, 2012 letter at a time when it had evaluated the claim as far exceeding its available policy benefits coupled with its overt attempts to transfer its own liability to others or avoid liability altogether constitutes evidence that Hartford acted intentionally, outrageously, indifferently to the rights of Mrs. York and in reckless disregard of its insured's rights.  App. 987-990. These intentional actions forced Mrs. York to file suit to recover the policy benefits due and owing in violation of Kentucky law. Ky. Rev. Stat. § 304.12–230 (7).  Charles Miller, an expert on insurance claims handling standards throughout the United States clearly testified that Hartford's handling of Mrs. York's claim violated industry standards and constituted bad faith claims handling practices under both West Virginia and Kentucky law.[12]  Similarly, he testified that Hartford's interpretation of its policy provisions was contrary to the interpretations afforded identical policy provisions by the International Risk Management Institute.

That Hartford acted intentionally, outrageously, indifferently and in reckless disregard of its insured's rights is further demonstrated by its failure to respond to the lawsuit filed against it, forcing Mrs. York and the statutory beneficiaries to participate in a Writ of Inquiry in order to obtain the policy benefits due and owing

---

[12] Hartford did not depose Mr. Miller until January 14, 2014, after briefing on its Motion for Summary Judgment had closed in the district court.  Accordingly, his testimony was not and could not have been presented to the district court.  Mr. Miller's testimony cited herein may be found at pages 73-81, 105-107 and 122-130 of his January 14, 2014 deposition transcript.

and to place a value on the life of Adam York. While there is evidence to suggest that Hartford's misfiling of the March 9, 2012 Amended Complaint predicated its failure to timely Answer or otherwise respond to the Amended Complaint, it is undisputed that the Notices of Hearing for the two August 6, 2012 Hearings and the Verified Petition and Application for Permission to Settle Claim and Distribute Proceeds were in Hartford's possession and in its claim file no later than August 1, 2012. App. 246-261. It is undisputed that each of these three documents identified Hartford as a named defendant in the case caption. App. 246-261. It is further undisputed that Hartford did not appear at the August 6, 2012 hearings. It is undisputed that the first time Hartford ever presented a check to Mrs. York representing payment of the $100,000 underinsured motorist policy limit was on November 15, 2013, nearly two years after payment was demanded and six weeks after the district court set aside the August 6, 2012 default judgment. App. 642, 753.

All of the evidence set forth herein was presented to the district court. App. 896-990. This was not a case of "mere delay" where an insurance carrier simply did not get around to doing something or where it needed information that it did not possess to complete its evaluation. All of the evidence set forth herein, when viewed in the light most favorable to Mrs. York, is such that an reasonable jury could find that Hartford: (1) had no reasonable basis for denying payment of the

40

claim for twenty-two months or acted with reckless disregard to whether such basis existed; (2) engaged in outrageous conduct toward its insured; and/or (3) acted with an indifference to its insured's rights. *See*, *Curry*, 784 S.W.2d at 178; *Wittmer v. Jones*, 864 S.W.2d at 890; *Bult*, 183 S.W.3d at 186. All of the evidence set forth herein demonstrates the existence of a genuine issue of material fact from which a reasonable jury may find in favor of Mrs. York. The district court erred in granting summary judgment and dismissing Mrs. York's claims.

## CONCLUSION

The United States District Court for the Southern District of West Virginia's threshold error of failing to remand this matter to the Circuit Court of Mingo County, West Virginia as untimely removed was at the tip of a series of erroneous rulings culminating in the outright dismissal of Mrs. York's legitimate and serious claims. The district court ignored documentary evidence from Hartford's own claim file demonstrating that Hartford knew or should have known that it was a defendant in default and, instead, excused Hartford's default and set aside the default judgment obtained by Mrs. York by assigning blame to Mrs. York's counsel for failing to call and advise Hartford it was in default, an obligation found nowhere in the law.

The district court further erred in its analysis of applicable choice of law principles and decision to apply Kentucky law to Mrs. York's bad faith tort claims

41

by characterizing them as contractual in nature and ignoring West Virginia's substantial interest and contacts with this dispute.  The district court ignored substantial evidence in the record demonstrating that, even if Kentucky law were applicable, Mrs. York presented evidence that Hartford acted intentionally, in reckless disregard of known obligations and with indifference to Mrs. York's rights.  The district court mischaracterized Hartford's misconduct as "mere delay" and erred by dismissing Mrs. York's claims on summary judgment where genuine issues of material fact are apparent in the record.

WHEREFORE, for the reasons set forth above, Appellant Robin J. York, Adminsitratrix of the Estate of Adam R. York, respectfully requests that the United States District Court for the Southern District of West Virginia's October 3, 2013 Memorandum Opinion and Order denying Plaintiff's Motion to Remand be reversed, that all other subsequent and contemporaneous decisions of the United States District Court for the Southern District of West Virginia be vacated as having been rendered without subject matter jurisdiction and this matter remanded to the Circuit Court of Mingo County, West Virginia for further proceedings. Alternatively, should this Court affirm the district court's remand order, Appellant respectfully requests that the district court's October 3, 2013 order vacating the August 6, 2012 default judgment and its March 4, 2014 Memorandum Opinion and Order choosing to apply Kentucky law, granting summary judgment in favor of

Property and Casualty Insurance Company of Hartford be reversed and this matter remanded for the trial of Appellant's common law and bad faith claims under West Virginia law, together with such other and further relief as the Court may deem proper.

## REQUEST FOR ORAL ARGUMENT

Counsel for Appellant respectfully request oral argument.

Respectfully Submitted,

*/s/ James Graham Bordas III*
JAMES GRAHAM BORDAS III
MICHELLE LEE MARINACCI
BORDAS & BORDAS, PLLC
1358 National Road
Wheeling, WV 26003
(304) 242-8410

C. BENJAMIN SALANGO
PRESTON & SALANGO
P.O. Box 3084
Charleston, WV 25331
(304) 342-0512

*Counsel for Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 14-1343          **Caption:** Robin York v. Property and Casualty Ins. Co. of Hartford

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]  this brief contains _____10,842_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]  this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]  this brief has been prepared in a proportionally spaced typeface using
   2010 Microsoft Word_____ [*identify word processing program*] in
   TImes  New Roman, 14 Point_____ [*identify font size and type style*]; **or**

   [ ]  this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) Michelle Lee Marinacci_____

Attorney for Appellant Robin York_____

Dated: 6/3/2014_____

# CERTIFICATE OF SERVICE

I certify that on ___June 3, 2014___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

MICHAEL H. CARPENTER
KATHERYN MEAGAN LLOYD
CARPENTER LIPPS & LELAND, LLP
280 Plaza
280 North High Street
Columbus, OH 43215
(614) 365-4100

SEAN MAROTTA
CATHERINE EMILY STETSON
HOGAN LOVELLS US LLP
555 13th Street, NW
Washington, DC 20004
(202) 637-4881

JOHN L. MACCORKLE
RENATHA GARNER
MACCORKLE, LAVENDER & SWEENEY, PLLC
300 Summers Street, Suite 800
Charleston, WV 25332
(304) 344-5600

___/s/ Michelle Lee Marinacci___
Signature

___June 3, 2014___
Date